# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARK A. CASTILLO | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-11-396 |
| WARDEN BOBBY P. SHEARIN, *et al*. | * | |
| Defendants | * | |

* * *

## MEMORANDUM OPINION

Pending is Defendants' Response to Show Cause. ECF No. 8. Plaintiff filed an Emergency Motion for Protection on February 11, 2011, alleging that his life is threatened because correctional officers at North Branch Correctional Institution (NBCI) are encouraging other inmates to assault him. ECF No. 4. The issue of whether Plaintiff is entitled to preliminary injunctive relief is now ripe for consideration. In addition, the court will consider Plaintiff's Motion for Appointment of Counsel. ECF No. 3.

## Background

Plaintiff alleges that since his arrival at NBCI in October of 2009 he has been assaulted four times, abused and harassed. ECF No. 4. He claims he is targeted because of the nature of his "horrible crime." *Id*. Plaintiff states he is on disciplinary segregation, but claims he is there due to continual harassment by Sergeant Cross about the nature of Plaintiff's crime. Cross claimed that Plaintiff threatened to hit him in the face, but Plaintiff states the claim is a lie and that all of his complaints about staff behavior go unaddressed. Plaintiff's allegations of harassment range from officers calling him a baby killer, refusing to allow him to sign for the receipt of a Notice of Infraction, intentionally trying to put him in a recreation cage with an inmate who assaulted him, denying him privileges like recreation and showers, interfering with

outgoing mail, searching his cell and confiscating paper work, and staff discussing the nature of his crime with other inmates.[1] ECF No. 1. He seeks an order requiring him to be provided with a housing assignment where he is free of harassment and assaults, but stops short of requesting protective custody or transfer.

Defendants state in response to Plaintiff's allegations that he was involved in three incidents resulting in minor injuries which were treated on site by medical staff. ECF No. 8 at Ex. A and B, pp. 56 and 88. The only altercation witnessed by staff involving Plaintiff occurred on August 17, 2010. *Id*. at Ex. A, p. 26. On two other occasions, October 23, 2009, and May 5, 2010, Plaintiff had signs of injury or reported having a problem with his cell mate. *Id*. at pp. 12—14 and 17. Defendants have no evidence of an assault occurring on September 26, 2010. The other inmates involved in the altercations with Plaintiff were placed on his enemies list and he was not required to share a cell with them. *Id*. at Ex. C, p. 2. Plaintiff was also placed in a single cell, had meals brought to his cell, and was placed on "rec alone" status in order to minimize the risk of conflict with other inmates. *Id*. at Ex. A, pp. 48 and 62; and Ex. C, p. 2. Plaintiff protests this sort of isolation as unconstitutional. ECF No. 4. Defendants state, however, that the objective is to work with Plaintiff to gradually introduce him into the general population. ECF No. 8 at Ex. A, p. 4. Plaintiff apparently expressed the desire to move to general population as well. *Id*. at Ex. B, p. 127.

On October 23, 2009, Plaintiff was confined to a cell with inmate Reginald Manning. Officers observed Plaintiff in the cell, bleeding from his face. ECF No. 8 at Ex. A, pp. 12—13. Plaintiff was escorted to medical where he received treatement for a minor laceration. *Id*. at Ex. B, p. 10. Plaintiff would not tell staff what happened to cause his injury and Manning claimed

---

[1] Plaintiff drowned his three young children in a Baltimore hotel room. *See* ECF No. 8 at Ex. B, p. 9. The case was well publicized.

Plaintiff fell from the bed. *Id*. at Ex. A, p. 15. Staff later determined that Manning and Plaintiff had been at odds. Plaintiff was assigned to a single cell on April 16, 2010, but it was not a permanent assignment. *Id*. at pp. 7 and 10.

On May 5, 2010, Plaintiff informed staff he had been in a fight with his cell mate, Paul Graham. Plaintiff had a deep bite mark on his shoulder and scratches on his face. He was again taken to medical for treatment of the wounds. ECF No. 8 at Ex. A, p. 17 and Ex. B, p. 56 and 61. Graham was later found guilty of assault and Plaintiff was found not guilty. The two men were separated and Graham was noted as one of Plaintiff's enemies. *Id*. at Ex. A, pp. 19-25.

On August 17, 2010, Officer Gilpin saw Plaintiff fighting with yet another cell mate, Steve Chadwick. *Id*. at p. 26. Plaintiff required stitches to his head for the injury sustained in the fight with Chadwick. *Id*. at Ex. B, p. 89. Because Plaintiff admitted to exchanging blows with Chadwick, both he and Chadwick were found guilty of fighting. *Id*. at pp. 28 – 36.

Plaintiff claims these assaults he suffered have left him with lingering injuries such as a chronic severe headache which began shortly after the October 2009 asault. ECF No. 8 at Ex. B, p. 84. He also claims that during the May 2010 assault his assailant fell on his right leg and knee causing him pain when walking. *Id*. at p. 57. Plaintiff has voiced concern to medical staff that he was losing his hearing as a result of multiple blows to the head. *Id*. at p. 140. Plaintiff is frequently monitored and medicated by medical staff for migraines, depression, anxiety, and suicidal thoughts but has refused counseling. *Id*. at Ex. B, pp. 115 and 127. Although Plaintiff claims to have attempted suicide due to the harassment by officers, the records submitted by Defendants indicate that Plaintiff is not actively suicidal and has not made any attempts on his life. *Id*.

Plaintiff claims that the first assault by Manning was set up by correctional officers and was supposed to end in his death. He alleges that Manning told him the officers put him in the cell with Manning so that Plaintiff would be killed. After Plaintiff was assaulted by Graham, Plaintiff was told to go into a recreation cage where Graham was standing. Plaintiff refused and both men told the officer they were enemies and should not be in the same cage together. Plaintiff complains that instead of arranging for him to have recreation somewhere other than where Graham was, he was required to go back to his cell and did get recreation that day. Plaintiff also takes issue with the fact that he was found guilty of an infraction in the context of the incident involving Chadwick. He claims there was not a mark on Chadwick, but Plaintiff required stitches to the head. He characterizes the infraction as a bogus attempt to harass him.

Defendants acknowledge, to a degree, that Plaintiff's safety is problematic due to the nature of his crime. In individual therapy notes written January 22, 2010, Laura Moulden, LCPC, stated that:

> This writer attempts to explain to the inmate that while it is no one's job here to judge him, he will naturally be judged by other inmates for the nature of his crime and the high profile of his crime. He has come to realize that the inmates all know what his crime was and he is feeling harassed. As for the harassment he feels that he is getting from officers, it is explained to him that his move [from one cell to another] was not based on his individual case, it was required because he is not a program inmate.

ECF No. 8 at Ex. B, p. 30. As of March 4, 2011, Plaintiff has been assigned to general population. *Id*. at p. 147.

**Standard of Review**

Motion for Appointment of Counsel

A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1)[2] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. District Court*, 490 U.S. 296, 298 (1989). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id.*

Upon careful consideration of the motions and previous filings by Plaintiff, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before the Court are not unduly complicated and no hearing is necessary to the disposition of this case. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Plaintiff under §1915(e)(1). The Motion for Appointment of Counsel will be denied without prejudice.

Motion for Preliminary Injunctive Relief

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an

---

[2] Under § 1915(e)(1), a court of the United States may request an attorney to represent any person unable to afford counsel.

injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

**Analysis**

Many of the issues Plaintiff construes as harassment by correctional staff are a result of miscommunication or misunderstanding. Plaintiff claimed he was forcibly removed from his assigned cell as a means of harassment. ECF No. 1 at Ex. 12B. It was later explained to him that his move was required because his assigned cell was on a tier mostly reserved for inmates participating in programs and Plaintiff was not participating in a program at the time. ECF No 8 at Ex. B, p. 30. Plaintiff's refusal to comply with orders to move prompted the use of force to remove him. ECF No. 1 at Ex. 12C.

Plaintiff also complained about mail he sent out of the prison not reaching its destination. ECF No. 1 at Ex. 19C and Ex. 38C. In the first instance Plaintiff was advised to pursue his claim through the Postmaster General and in the second instance Plaintiff later admitted to neglecting to include a voucher for payment of certified mail delivery. Plaintiff does not include any accounts of witnesses who claim his mail being destroyed.

Plaintiff complained he was denied commissary. ECF No. 1 at Ex. 29B. An investigation revealed that Plaintiff simply needed to submit an order form to receive commissary. *Id*. Thus, the denial of commissary was a result of Plaintiff's unfamiliarity with procedures, not a deliberate attempt to harass him.

The more egregious complaints filed by Plaintiff concern his allegations that correctional officers were discussing the nature of his crime with other inmates, officers assigned him to a cell with an inmate who planned to kill him, and he was deliberately exposed to harm when he was required to take recreation at the same time as an inmate who had previously assaulted him. ECF No. 1 at Ex. 19, 28, 31, and 33. Plaintiff's statement written after the assault by inmate Graham indicates the altercation was caused by Plaintiff's suspicion that Graham was stealing his commissary items; there is no mention of the nature of Plaintiff's crime. ECF No. 8 at Ex. A, p. 19. Plaintiff's claim that staff tried to set him up by putting him in a recreation cage with Graham was investigated. *Id*. at pp.45 –50. Staff on duty on August 24, 2010[3] were unaware of the "enemy situation" between Plaintiff and Graham, but when Plaintiff told staff about it he was not required to go into the recreation cage with Graham. *Id*. at p. 50. Plaintiff was returned to his cell in order to insure his safety. *Id*. It was noted that Plaintiff felt the issue had been resolved but declined to withdraw the complaint in order to "see what he could get from the state." *Id*. Subsequent to the incident Plaintiff was placed on "rec alone" status.

Plaintiff's statement regarding the altercation with inmate Chadwick alleges that Chadwick was "throwing insults" at Plaintiff and soon after began an assault on him. ECF No. 8 at Ex. A, p. 28. Plaintiff states he was able to get Officer Gilpin's attention during the assault and help was called. *Id*. Plaintiff also states that medical assistance was provided. There is no mention of the assault occurring due to the notoriety of Plaintiff's crime.

The claims submitted by Plaintiff regarding correctional officers commenting on the nature of his crime are in the context of an incident where Plaintiff held the feed-up slot on his cell door open despite direct orders to cease doing so. ECF No. 1, Ex. 28B and 41B.

---

[3] On August 23, 2010, different officers also tried to put Plaintiff together with Graham for recreation, but upon being told by Plaintiff that they were enemies placed Plaintiff in a different recreation cage. ECF No. 8 at Ex. A, p. 46.

Specifically Plaintiff claims he was served with a Notice of Infraction by Officers Lowry and McKinney but was not allowed to sign the form indicating he had received it. In that context, Plaintiff claims the officers referred to him as a baby-killer. In addition, Plaintiff claims Officers Curry, Bauer and Sgt. Cross also frequently make comments about the nature of his crime to the detriment of his safety. At present the record contains no statements under oath from the officers denying that such statements were made and Plaintiff has not alleged that any harm has befallen him as a result of the statements being made. There is not enough evidence establishing that reckless or deliberate behavior on the part of the officers has created a known risk of harm to Plaintiff.

The assaults Plaintiff suffered at the hands of other inmates were addressed promptly by staff after the circumstances were uncovered. Plaintiff's assailants were placed on an enemies list so that his exposure to those individuals could be avoided in the future. The court notes that Plaintiff has not claimed that he cannot be safely confined in the Maryland Division of Correction and he does not seek placement on protective custody. Indeed, Plaintiff's stated goal was to achieve placement in general population with many of his complaints to staff directed at his confinement to administrative segregation.

On the record before the court there is no basis for preliminary injunctive relief. The remaining dispute regarding Plaintiff's claim for monetary damages for the harm he suffered as a result of being assaulted will proceed for further response.

Date:   March 22, 2011                           /s/
                                                DEBORAH K. CHASANOW
                                                United States District Judge